UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
─────────────────────────────────────────────

SADIE M. WILBURN,

                         Plaintiff,

v.                                     1:15-CV-00058
                                          (DNH/TWD)

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF SOCIAL SECURITY,

                         Defendant.
─────────────────────────────────────────────

APPEARANCES:                                         OF COUNSEL:

Office of Peter M. Margolius               PETER M. MARGOLIUS, ESQ.
*Attorney for Plaintiff*
7 Howard Street
Catskill, New York 12414

HON. RICHARD S. HARTUNIAN           BENIL ABRAHAM, ESQ.
United States Attorney for the             Special Assistant United States Attorney
  Northern District of New York
*Attorney for Defendant*
Room 218
James T. Foley U.S. Court House
Albany, New York 12207

OFFICE OF GENERAL COUNSEL             STEPHEN P. CONTE, ESQ.
Social Security Administration              Chief Counsel, Region II
26 Federal Plaza, Room 3904
New York, New York 10278

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## REPORT-RECOMMENDATION

     This matter was referred to the undersigned for report and recommendation by the Honorable David N. Hurd, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Northern District of New York Local Rule 72.3. This case has proceeded in accordance with

General Order 18 of this Court which sets forth procedures to be followed when appealing a denial of Social Security Benefits. Both parties have filed briefs. Oral argument was not heard. For the reasons discussed below, the Court recommends that the decision of the Commissioner be affirmed and the Complaint (Dkt. No. 1) be dismissed.

I.  **BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff Sadie M. Wilburn was born on May 28, 1963. (Administrative Transcript at 34.[1]) She graduated from high school, but has no further education. (T. at 36.) She reported past work as a cashier and certified nursing assistant. (T. at 37-38, 54.) Plaintiff has not worked since 2008. (T. at 37.) She resides with her children and grandchild. (T. at 35.) Plaintiff alleges disability due to depression, anxiety, substance dependence in reported remission, right hip impairments, lumbar spine impairments, right shoulder pain, learning disorder, constipation, high blood pressure, and hypertension. (T. at 16-17.)

Plaintiff applied for Supplemental Security Income ("SSI") on February 15, 2012. (T. at 14.) The application was denied on May 7, 2012. *Id.* Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). *Id.* The hearing was held on May 1, 2013, before ALJ Dale Black-Pennington. *Id.* On July 15, 2013, the ALJ issued a decision finding that Plaintiff was not disabled. (T. at 11.) The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on November 21, 2014. (T. at 2.) Plaintiff then timely commenced this action on January 16, 2015. (Dkt. No. 1.)

---

[1] The Administrative Transcript is found at Dkt. No. 9. Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the numbers assigned by the Court's CM/ECF electronic filing system.

## II. APPLICABLE LAW

### A. Standard for Benefits[2]

To be considered disabled, a plaintiff seeking SSI disability benefits must establish that he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A) (2015). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* § 1382c(a)(3)(B).

Acting pursuant to its statutory rulemaking authority, 42 U.S.C. § 405(a), the Social Security Administration ("SSA") promulgated regulations establishing a five-step sequential evaluation process to determine disability. 20 C.F.R. § 416.920(a)(4) (2015). Under that five-step sequential evaluation process, the decision-maker determines:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the

---

[2] While the SSI program has special economic eligibility requirements, the requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3) (SSI) and Title II, 42 U.S.C. § 423(d) (Social Security Disability Insurance), are identical, so that "decisions under these sections are cited interchangeably." *Donato v. Sec'y of Health and Human Servs.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983) (citation omitted).

claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

The plaintiff-claimant bears the burden of proof regarding the first four steps. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (quoting *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996)). If the plaintiff-claimant meets his or her burden of proof, the burden shifts to the defendant-Commissioner at the fifth step to prove that the plaintiff-claimant is capable of working. *Id.*

**B.    Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted); *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson*, 817 F.2d at 986.

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g) (2012); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). An ALJ must set forth the crucial factors justifying her findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Roat v. Barnhart*, 717 F. Supp. 2d

241, 248 (N.D.N.Y. 2010);[3] *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted). It must be "more than a mere scintilla" of evidence scattered throughout the administrative record. *Featherly*, 793 F. Supp. 2d at 630; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 30 U.S. 197, 229 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citations omitted). If supported by substantial evidence, the ALJ's findings must be sustained "even where substantial evidence may support the plaintiff's positions and despite that the court's independent analysis of the evidence may differ from the [ALJ's]." *Rosado*, 805 F. Supp. at 153. A reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

## III. THE ALJ'S DECISION

The ALJ found that Plaintiff has the following severe impairments: depression, anxiety, substance dependence in reported remission, right hip impairments, and lumbar spine impairments. (T. at 16.) She found that Plaintiff did not have an impairment or combination of

---

[3] On Lexis, this published opinion is separated into two documents. The first is titled *Roat v. Barnhart*, 717 F. Supp. 2d 241, 2010 U.S. Dist., LEXIS 55442 (N.D.N.Y. June 7, 2010). It includes only the district judge's short decision adopting the magistrate judge's report and recommendation. The second is titled *Roat v. Comm'r of Soc. Sec.*, 717 F. Supp. 2d 241, 2010 U.S. Dist. LEXIS 55442 (N.D.N.Y. June 7, 2010). It includes only the magistrate judge's report and recommendation. Westlaw includes both the district court judge's decision and the magistrate judge's report and recommendation in one document, titled *Roat v. Barnhart*, 717 F. Supp. 2d 241 (N.D.N.Y. 2010). The Court has used the title listed by Westlaw.

impairments that meets or medical equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (T. at 17.) The ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b), except that Plaintiff was limited to occasional stooping, crouching, bending, and climbing of stairs or ramps. (T. at 19.) Plaintiff was precluded from climbing ladders, ropes, or scaffolds. *Id*. Plaintiff can understand and follow simple instructions and directions, perform simple routine tasks, and complex tasks with occasional supervision and reinstruction. *Id.* Plaintiff can stand or walk for ten to thirty minutes at a time, and requires the ability to move around for comfort. *Id.*

Plaintiff has no relevant past work. (T. at 23.) The ALJ found that considering Plaintiff's age, education, work experience, and the RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (T. at 24.) "After careful consideration of all the evidence," the ALJ concluded that Plaintiff has not been under a disability within the meaning of the SSA since February 15, 2012, the date the application was filed. *Id*.

## IV. THE PARTIES' CONTENTIONS

Plaintiff argues that the ALJ failed to properly evaluate the medical opinions of State agency consultative examiners Joseph Prezio, M.D., and Neil Berger, Ph.D., and State agency medical consultant Dr. A. Herrick, Psychology. (Dkt. No. 10 at 3-4.[4]) Defendant argues that the ALJ thoroughly evaluated and weighed each of these opinions and that Plaintiff's RFC is supported by substantial evidence. (Dkt. No. 11 at 7.)

---

[4] Page references to the parties' briefs identified by docket number are to the numbers assigned by the Court's CM/ECF electronic docketing system.

## V. DISCUSSION

### A. Opinion Evidence and the RFC Determination

A claimant's RFC is the most she can do despite her limitations. 20 C.F.R. § 416.945(a)(1). Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. "A regular and continuing basis means eight hours a day, for five days a week, or an equivalent work schedule." *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quotations omitted)).

It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion. 20 C.F.R. § 416.946(c). In determining RFC, the ALJ can consider a variety of factors including a treating physician's or examining physician's observations of limitations, the claimant's subjective allegations of pain, physical and mental abilities, as well as the limiting effects of all impairments even those not deemed severe. 20 C.F.R. § 416.945(a). Age, education, past work experience, and transferability of skills are vocational factors to be considered. *Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999). Physical abilities are determined by evaluation of exertional and nonexertional limitations. Exertional limitations include claimant's ability to walk, stand, lift, carry, push, pull, reach, and handle. 20 C.F.R. § 416.969a(b). Nonexertional limitations include mental impairments and difficulty performing the manipulative or postural functions of some work such as reaching, handling, stooping, climbing, crawling, or crouching. 20 C.F.R § 416.969a(b)-(c).

The ALJ "is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the

7

other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). Once the ALJ has resolved a claimant's complaints of pain, he can then evaluate exertional and non-exertional limitations. *Lewis v. Apfel*, 62 F. Supp. 2d 648, 658 (N.D.N.Y. 1999).

The RFC can only be established when there is substantial evidence of each physical requirement listed in the regulations. *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004) (citation omitted). "In assessing RFC, the ALJ's findings must specify the functions a plaintiff is capable of performing; conclusory statements regarding the plaintiff's capacities are not sufficient." *Roat*, 717 F. Supp. 2d at 267 (citation omitted). "RFC is then used to determine the particular types of work a claimant may be able to perform." *Whittaker*, 717 F. Supp. 2d at 440.

### B.     Opinion of Dr. Prezio

Plaintiff contends that the ALJ failed to adequately consider Dr. Prezio's opinion because the RFC failed to incorporate all of Dr. Prezio's postural limitations. (Dkt. No. 10 at 3-4.) Defendant argues that substantial evidence supports the ALJ's decision to accord Dr. Prezio's opinion "significant, but not great weight." (Dkt. No. 11 at 7.)

Dr. Prezio examined Plaintiff on April 4, 2012. (T. at 234.) Dr. Prezio opined that Plaintiff had "moderate restriction for prolonged standing, walking, climbing stairs, squatting, kneeling, and doing any bending or crawling." (T. at 237.) Plaintiff argues that by failing to incorporate Dr. Prezio's restrictions for bending and crawling, the ALJ failed to adequately consider Dr. Prezio's medical opinion. (Dkt. No. 10 at 3-4.) The Court disagrees.

In determining the RFC, the ALJ must make a decision based on all of the relevant evidence, including a claimant's medical record, statements by physicians, and a claimant's description of her limitations. *See* 20 C.F.R. § 416.945(a). Although an ALJ will consider

medical opinions on a claimant's function, ultimately the ALJ is tasked with reaching an RFC assessment based on the record as a whole. 20 C.F.R. § 404.1527(d)(2); *see also* SSR 96-6p, 1996 WL 374180, at *1-2 (SSA July 2, 1996). Significantly, the ALJ's RFC finding need not track any one medical opinion. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (although ALJ's conclusion did not perfectly correspond with any of the opinions of medical sources, ALJ was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole) (citing *Richardson*, 402 U.S. at 399) ("We therefore are presented with the not uncommon situation of conflicting medical evidence. The trier of fact has the duty to resolve that conflict.")).

Plaintiff's argument fails to acknowledge that the ALJ gave Dr. Prezio's opinion "significant, but not great weight," and was under no obligation to incorporate all of the doctor's assessments into the RFC. (T. at 22.) Plaintiff argues that the ALJ provided "no rationale as to why she rejected" the portion of Dr. Prezio's opinion that precluded Plaintiff from "doing any bending or crawling as a result of the inflammatory process and physical findings noted in and around the region of the right sacroiliac joint." (Dkt. No. 10 at 3-4.) However, in affording Dr. Prezio's opinion "significant, but not great weight," the ALJ explained that Dr. Prezio's opinion was "generally supported" by the record as it existed at that time. (T. at 22.) However, treatment records subsequent to Dr. Prezio's examination indicated greater limitation in Plaintiff's ability to stand or walk at one time, and provided for additional postural limitation. *Id*. Accordingly, the ALJ found that Plaintiff was capable of occasional stooping, was limited to standing and walking in ten to thirty minutes intervals, and required the ability to move around for comfort. (T. at 19.)

9

Moreover, the results of Dr. Prezio's examination do not support a finding that Plaintiff was completely precluded from bending or crawling. (T. at 234-37.) On physical examination, Dr. Prezio noted that Plaintiff was in minimal chronic distress, used no assistive devices, required no help changing, and only needed minimal help getting off of the examination table. (T. at 235.) She rose from the chair with only some difficulty. *Id*. Plaintiff had full range of motion in her cervical spine and lumbar spine. (T. 236.) Plaintiff had pain on palpation over the sacroiliac joint, but the straight leg raising test was negative and there was no joint tenderness in her lumbar spine. *Id*. Plaintiff had full range of motion in her upper and lower extremities. *Id*. The neurological examination revealed physiologic and equal deep tendon reflexes, no sensory deficit, and full strength in the upper and lower extremities. *Id*. The April 5, 2012, x-ray of Plaintiff's lumbosacral spine was negative. (T. at 238.) Dr. Prezio also noted that Plaintiff's daily activities included cooking, cleaning, washing laundry, shopping, childcare, showering, bathing, and dressing. (T. at 235.) Her prognosis was good. *Id*.

Further, Plaintiff's testimony and other medical evidence of record do not support Dr. Prezio's bending and crawling preclusion. Plaintiff testified that she could stoop and bend, albeit with some pain. (T. at 44.) She did not report any limitations involved in kneeling, squatting, or reaching. (T. at 149.) Plaintiff took care of all her personal needs, cooked, washed laundry, shopped, and watched television. (T. at 46-47.) Plaintiff also reported that she is the caretaker for her two children and grandchild. (T. at 144.)

Following Dr. Prezio's examination, the State agency analyst concluded that Plaintiff would be capable of a range of light work, with additional limitations of occasional stooping or crouching. (T. at 62-67.) The February 2, 2012, progress note of Plaintiff's treating physician, Benjamin Okie, M.D., indicated no focal deficits or lumbosacral tenderness. (T. at 217.) On

August 29, 2012, State agency medical consultant Hemantha Surath, M.D., opined that the medical evidence of record supported an RFC for light work, and she did not assess any postural limitations. (T. at 302.) Finally, a September 4, 2012, MRI of Plaintiff's lumbar spine showed only mild lumbar spondylosis and no evidence of stenosis or nerve root compression. (T. at 363-64.) Accordingly, the Court finds that the ALJ's evaluation of Dr. Prezio's opinion was proper and the physical RFC determination was supported by substantial evidence.

  C.  **Opinions of Dr. Berger and Dr. Herrick**

Plaintiff argues that the ALJ failed to properly weigh the opinions of Dr. Berger and Dr. Herrick. (Dkt. No. 10 at 4.) Defendant argues that the ALJ properly evaluated both of these medical opinions and that Plaintiff's mental RFC is supported by substantial evidence. (Dkt. No. 11 at 10-12.) The Court agrees with the Commissioner.

Dr. Berger examined Plaintiff on April 4, 2012. (T. at 241-45.) The ALJ afforded Dr. Berger's opinion significant weight as it was based on the doctor's personal evaluation of Plaintiff. (T. at 22.) Dr. Berger opined that Plaintiff could follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks, perform complex tasks independently, make appropriate decisions, relate adequately with others, and appropriately deal with stress. (T. at 244.) This assessment is consistent with Dr. Berger's clinical findings.

On mental status examination, Dr. Berger found Plaintiff cooperative. (T. at 242.) Her manner of relating was adequate. *Id*. She was dressed appropriately and well groomed. *Id*. Her posture and motor behavior were normal. *Id*. Her eye contact was appropriate. *Id*. Plaintiff's speech was fluent, the quality of her voice was clear, and her expressive and receptive language were both adequate. (T. at 243.) Plaintiff's thought process was coherent and goal directed, her

sensorium was clear, and she was fully oriented. *Id*. Dr. Berger noted that Plaintiff's attention and concentration were intact and that although the "serial threes" took her some time to complete, she was still able to complete the task. *Id*. A slight impairment was noted with her recent and remote memory skills. *Id*. Plaintiff's cognitive functioning was average and her insight and judgment were fair. *Id*.

Dr. Berger noted that Plaintiff received her high school diploma in regular education. (T. at 241.) Plaintiff worked as a cashier and certified nursing assistant. *Id*. Dr. Berger noted that Plaintiff cooked, cleaned, washed laundry, managed money, and shopped without a problem. (T. at 243.) Plaintiff used public transportation without difficulty. *Id*. Accordingly, Dr. Berger concluded that Plaintiff's mental impairments did not appear to be "significant enough" to interfere with Plaintiff's ability to function on a daily basis. (T. at 244.)

Plaintiff argues that Dr. Berger found Plaintiff to be "internally distracted in the sense that she was extremely slow and in fact said that the serial 3 task, when described to her, would take all day . . . ." (T. at 243.) Plaintiff further argues that state agency medical consultant, Dr. A. Herrick, opined that Plaintiff was "moderately limited" in the ability to maintain attention and concentration for extended periods. (T. at 294.) Accordingly, Plaintiff argues that the RFC should have included limitations regarding the speed in which she is capable of performing mental tasks. (Dkt. No. 10 at 4.)

However, the portion of report in which Dr. Herrick made this observation, Section I of the Mental Residual Functional Capacity Assessment, "is merely a worksheet to aide in deciding the presence and degree of functional limitations and the adequacy of documentation and does not constitute the RFC assessment." *Burgen v. Colvin*, No. 5:14-CV-131 (MAD/CFH), 2014 WL 7408273, *10, 2014 U.S. Dist. LEXIS 178837, at *22-23 (N.D.N.Y. Dec. 30, 2014) (internal

quotation and citation omitted). In the functional assessment section of the report, Section III, Dr. Herrick found no concertation limitations. (T. at 296.) Specifically, Dr. Herrick opined that Plaintiff retained sufficient mental RFC "such that she should be able to adequately understand and remember; attend, concentrate, and persist; and interact with others such that she could do work-related tasks." (T. at 269.) This conclusion is consistent with the ALJ's RFC determination that Plaintiff "is able to understand and follow simple instructions and directions, perform simple routine tasks, and perform complex tasks with occasional supervision and reinstruction." (T. at 19.)

Moreover, although Dr. Berger found Plaintiff to be "internally distracted," he also opined that she "seemed to be pretty much intact." (T. at 243.) Notably, it is within the ALJ's "province" in resolving the evidence to accept parts of a doctor's opinion and to reject others. *See Veino v. Barnhart*, 312 F.3d 578, 588-89 (2d Cir. 2002) (finding that "it was within the province of the ALJ" in resolving the evidence to accept parts of a doctor's opinion and reject others); *see also Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (although ALJ's conclusion did not perfectly correspond with any of the opinions of medical sources, ALJ was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole).

Furthermore, the ALJ's mental RFC finding was consistent with the other medical evidence of the record. For example, the November 6, 2009, treatment records from Greene County Mental Health Center indicate that Plaintiff had a clear and logical thought process. (T. at 315.) Her speech had normal rate and rhythm. *Id.* She was well groomed, calm, and cooperative. *Id.* She maintained good eye contact. *Id.* In 2010, Plaintiff had a Global

13

Assessment of Functioning score of 64.[5] (T. at 307-09.) Finally, the 2012, encounter notes from Plaintiff's treating orthopedists, Christopher T. Gorczynski, M.D., state that Plaintiff's affect was normal and that she was cooperative with the examination. (T. at 343, 346, 349, 352, 354, and 356.) Accordingly, the Court finds that the ALJ properly evaluated the opinions of Dr. Berger and Dr. Herrick, and that Plaintiff's mental RFC finding was supported by substantial evidence.

In light of the foregoing, the Court finds that the ALJ's decision was based upon correct legal standards, and substantial evidence supports her determination that Plaintiff was not under a disability within the meaning of the SSA. 20 C.F.R. §416.920(g).

**WHEREFORE,** it is hereby

**RECOMMENDED**, that the decision of the Commissioner be **AFFIRMED** and Defendant's motion for judgment on the pleadings (Dkt. No. 11) be **GRANTED** and the Complaint (Dkt. No. 1) be **DISMISSED.**

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.</u>** *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

---

[5] The GAF score "rates overall psychological functioning on a scale of 0-100 that takes into account psychological, social, and occupational functioning." *Zabala v. Astrue*, 595 F.3d 402, 405 n.1 (2d Cir. 2010). A GAF score in the range of 61 to 70 indicates the presence of "some mild symptoms," such as a depressed mood or insomnia, or some difficulty in social or occupational functioning, but also indicates that the patient is "generally functioning pretty well" and "has some meaningful interpersonal relationships." *Id.* (citing American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* ("DSM-IV") 34 (4th ed. Rev. 2000)).

Dated: February 29, 2016
Syracuse, New York

_____
Thérèse Wiley Dancks
United States Magistrate Judge